**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO CIVIL DIVISION**

WILFRED BERMUDEZ, on behalf
of himself and on behalf of all others
similarly situated,

      Plaintiffs,

v.                             Case No. :

WESTGATE RESORTS, INC., a
Florida profit corporation,

      Defendant.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Wilfred Bermudez, by and through his attorneys, and on behalf of himself, the putative classes set forth below, and in the public interest, brings the following Class Action Complaint as of right against Defendant, Westgate Resorts, Inc., including, subsidiaries, divisions and affiliates under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

## PRELIMINARY STATEMENT

1.      Plaintiff is a consumer/applicant who was the subject of a consumer report used for employment purposes by Defendant, Westgate Resorts, Inc.

2.      Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action, such as denying employment, removal from job assignments, and denying promotions or other job related opportunities.

3.      The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose.  Such use becomes lawful if and only if the "user" – in this case "Defendant"– has complied with the statute's strict disclosure and authorization requirements. 15 U.S.C. § 1681b(b)(2).

4.      Defendant willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

5.      Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first providing a clear and conspicuous disclosure before procuring the report.

6.      Defendant was required to disclose to its applicants and employees – *in a document that consists solely of the disclosure* – that it might obtain a consumer report for employment purposes.  However, Defendant did not make the disclosure in a "stand alone" document consisting solely of the disclosure. *Id*.

7.      Defendant also violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiff and other putative class members without proper authorization, since it never provided them with a lawful disclosure.

8.      Another key protection the FCRA provides consumers in the employment context is the requirement that employers—*before* using consumer reports to make an adverse employment decision—provide consumers with notice, a copy of their report, and a written summary of their FCRA rights.  Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members without first providing Plaintiff and other affected class members notice, a copy of their consumer report, and a summary of their FCRA rights.  Consequently, consumers were deprived of the opportunity to

confirm the accuracy of their report, learn the contents of their report, or dispute their report with Defendant.

9.     In Counts I and II, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class," consisting of:

> **All consumers in the United States subject of a consumer report obtained by Westgate Resorts, Inc. for employment purposes but to whom Westgate Resorts, Inc. did not provide a lawful disclosure pursuant to 15 U.S.C. § 1681b(b)(2)(A)(i) prior to procuring the report in the two years preceding the filing of this action through the date of final judgment.**

10.    In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

> **All consumers in the United States against whom Westgate Resorts, Inc. took adverse employment action based, in whole or in part, on information contained in a consumer report obtained within five years preceding this action through the date of final judgment, who were not provided notice, a copy of the consumer report or a summary of rights pursuant to 15 U.S.C. § 1681b(b)(3)(A).**

11.    On behalf of themselves and the putative classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

12.    Individual and representative Plaintiff, Wilfred Bermudez ("Plaintiff") applied for employment with Defendant, was briefly employed by Defendant, and is a member of the putative Background Check Class and Adverse Action Class defined below.

13.    Defendant is a corporation and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

14.     This is an action for statutory damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

15.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

16.     Venue is proper in the United States District Court, Middle District of Florida, Orlando Civil Division because Plaintiff resides in Orlando, Florida, the events giving rise to the allegations in this Complaint occurred in the Middle District of Florida and Defendants are headquartered in the Middle District of Florida.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES
### *Background Checks*

17.     Defendant conducts background checks on job applicants as part of a standard screening process.  In addition, Defendant also conducts background checks on existing employees from time-to-time during the course of their employment.

18.     Defendant does not perform these background checks in-house.  Rather, Defendant relies on an outside consumer reporting agency to obtain this information and report it to Defendant.  These reports constitute "consumer reports" for purposes of the FCRA.

### *FCRA Violations Relating to Background Check Class*

19.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)     *a clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

> (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

4

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (*emphasis added*).

20.    Defendant failed to satisfy these disclosure and authorization requirements.

21.    Defendant did not provide a clear and conspicuous disclosure before procuring consumer reports.  In fact, the purported disclosure was not clear because it contained language that a reasonable person would not understand.  The purported disclosure was not conspicuous because it was obfuscated by unnecessary information.

22.    Defendant did not have a stand-alone FCRA disclosure or authorization form. The FCRA requires that a disclosure not contain extraneous information.  This is commonly referred to as the "stand alone disclosure" requirement.  Defendant's purported FCRA disclosure contained extraneous information.

23.    Providing notice to consumers is a critical component of the FCRA, as the FCRA also contains several other notice provisions.[1]

24.    The purpose of FCRA notice provisions, including § 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared.  This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing consumers the opportunity to ensure accuracy, confidentiality and fairness in the use of their personal, private information.

25.    Without clear notice that a consumer report is going to be procured, applicants and employees are deprived of the opportunity to make informed decisions or otherwise assert protected rights.

26.    Using a FCRA disclosure that is not "stand alone" violates the plain language of

---

[1] Such provisions include: 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse action); § 1681b(4)(B)(notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

the statute and consumers' federally protected rights. *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016) ("[Plaintiff] has statutorily-created rights under the FCRA to receive a clear and conspicuous stand-alone disclosure."); *Fosbrink v. Area Wide Protective, Inc.*, No. 8:17-cv-1154-T-30TBM, 2018 WL 2229130, at *3 (M.D. Fla. May 8, 2018) ("In sum, Plaintiff has established that he was deprived of a statutory right to receive a stand-alone disclosure.")

27.     Defendant knowingly and recklessly disregarded case law and regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on consumers without complying with the disclosure and authorization requirements of the statute.  Defendant's violations were willful because Defendant knew it was required to use a stand-alone disclosure form prior to obtaining and using a consumer report on the putative class members.

28.     Defendant's conduct is also willful because:

    a.     Defendant is a large and sophisticated employer with access to legal advice through its own attorneys and there is no evidence it determined its own conduct was lawful;

    b.     Defendant knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law and the plain language of the statute; and

    c.     Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

29.     Defendant acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members.  Defendant knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in promulgations of the FTC and in established case law. Defendant had access to materials and resources advising them of their duties under the FCRA.

6

*FCRA Violations Relating to Adverse Action Class*

30.     The FCRA also provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

31.     Defendant typically does not provide consumers with notice, a copy of their consumer report and summary of rights, before taking adverse action against them based on the information in such reports.

32.     Commonly known as the pre-adverse action requirement, 15 U.S.C. § 1681b(b)(3)(A), requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.

33.     By failing to provide Plaintiff and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, Defendant willfully disregarded this unambiguous regulatory guidance as well as the plain language of the statute, in violation of 15 U.S.C. § 1681b(b)(3)(A).

*How Westgate Resorts, Inc. Violated Plaintiff's Rights*

34.     Plaintiff applied for employment with Defendant on or around April, 2019.

35.     As part of the hiring process, Defendant provided Plaintiff with a purported disclosure that it intended to obtain Plaintiff's consumer report for employment purposes.

36.     Defendant procured a consumer report on Plaintiff.   The consumer report contained personal, private, and sensitive information about Plaintiff.

37.     Plaintiff attempted to read the disclosure but was distracted from the disclosure by the presence of additional information, including information about inapplicable state laws pertaining to background checks.

38.     The FCRA disclosure presented to Plaintiff was not clear *and* conspicuous.   The disclosure was not clear because it was not easily understandable by a lay person.   The disclosure was not conspicuous because it was obfuscated by a litany of irrelevant information about state laws and areas of inquiry.

39.     Plaintiff was confused about the nature and scope of Defendant's investigation into his background since it combined the statutory definitions of "consumer reports" and "investigative consumer reports."

40.     Plaintiff was confused about his rights due to the presence of the additional language contained in Defendant's forms.

41.     Plaintiff values his privacy rights.   If Plaintiff was aware Defendant had presented him with an unlawful FCRA disclosure, Plaintiff would not have authorized Defendant to procure a consumer report and dig deep into his personal, private and sensitive information.

42.     Defendant obtained Plaintiff's consumer report from ADP Screening and Selection Services.

43.     On or around April 26 2019, Plaintiff was hired as an engineer by Defendant.

44.     On or around June 30, 2019, the Defendant's General Manager informed Plaintiff he was being terminated because of his background check.   Plaintiff was immediately escorted off the premises.

45.     Defendant terminated Plaintiff without notice and without providing him a copy of his consumer report or summary of rights.

46.     Plaintiff was caught by surprise, since he had never lost a job because of a background check.

47.     Plaintiff was worried about the contents of his consumer report, whether it was accurate and how it would impact his future employment prospects.

48.     Plaintiff called Defendant's Human Resources department.  Human Resources refused to provide Plaintiff with any details or a copy of his background check.

49.     Plaintiff spent time trying to obtain his consumer report from Human Resources and researching if his rights had been violated.

50.     If Defendant had provided Plaintiff with pre-adverse action notice and a copy of his consumer report, Plaintiff could have clarified any confusion, addressed any inaccuracies or pled his case to continue his employment.

51.     If Defendant had provided Plaintiff with a copy of his consumer report, Plaintiff would have known what was on the report and would not have spent time trying to obtain a copy from Human Resources, worrying about its contents or researching his rights.

## CLASS ACTION ALLEGATIONS

52.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiff brings this action for himself and on behalf of a "Background Check Class," defined as:

> **All consumers in the United States subject of a consumer report obtained by Westgate Resorts, Inc. for employment purposes but to whom Westgate Resorts, Inc. did not provide a lawful disclosure pursuant to 15 U.S.C. § 1681b(b)(2)(A)(i) prior to procuring the report in the two years preceding the filing of this action through the date of final judgment.**

53.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiff brings this action for himself and on behalf of an "Adverse Action Class," defined as:

> **All consumers in the United States against whom Westgate Resorts, Inc. took adverse employment action based, in whole or in part, on information contained in a consumer report obtained within five years preceding this action through the date of final judgment, who were not provided notice, a copy of the consumer report or a summary of rights pursuant to 15 U.S.C. § 1681b(b)(3)(A).**

54.     <u>Numerosity</u>:  The members of the putative classes are so numerous that joinder of all Class members is impracticable.   Defendant regularly obtains and uses information in  consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, in the hiring process.   Plaintiff is informed and believes that during the relevant time period, thousands of Defendant's employees and prospective employees satisfy the definition of the putative classes.  Based on the number of putative class members, joinder is impracticable.  The names and addresses of the Class members are identifiable through Defendant's records and published Class members may be notified of this action by mailed notice.

55.     <u>Typicality</u>:     Plaintiff's claims are typical of those of the members of the putative classes.  Defendant typically uses consumer reports to conduct background checks on employees and prospective employees.   The FCRA violations suffered by Plaintiff are typical of those suffered by other  putative class  members,  and  Defendant treated Plaintiff consistent with other putative class members in accordance with their standard policies and practices.

56.     <u>Adequacy</u>:     Plaintiff will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

57.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes.  These common questions include, but are not limited to:

    a.    whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

    b.    whether Defendant's background check practices and/or procedures comply with the FCRA;

    c.    whether Defendant violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

    d.    whether Defendant violated the FCRA by procuring consumer report information based on invalid authorizations;

    e.    whether Defendant violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Class based on information in a consumer report, without providing them notice, a copy of their consumer report, or summary of FCRA rights; and

    f.    the proper measure of statutory damages.

58.    This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendant. Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

59.    This case is also maintainable as a class action because Defendant acted or refused to act on grounds that apply generally to the putative classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the classes as a whole.

60.     Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendant's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA.   Members of the putative classes do not have an interest in pursuing separate actions against the Defendant, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to  concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

61.     Plaintiff intends to send notice to all members of the putative classes to the extent required by Federal Rules of Civil Procedure 23.   The names and addresses of the putative class members are readily available from Defendants' records.

## COUNT I
### Failure to Make Proper Disclosure in
### Violation of FCRA 1 5  U.S.C. § 1681b(b)(2)(A)(i)

62.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 1, 3-6, 9, 11-29, 34-52, and 54-71.

63.     In violation of the FCRA, the FCRA Disclosure form Defendant required the Background Check Class to complete as a condition of its employment with Defendant does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Defendant failed to

provide a stand-alone document as to the consumer report information being obtained and utilized.

*Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury*

64.     Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form.  Through the FCRA, Congress created a new right – the right to receive the required disclosure as set out in the FCRA – and a new injury – not receiving a stand-alone disclosure.

65.     Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure.  Such a disclosure was required to be provided to Plaintiff *before* the consumer report was to be procured.  By depriving Plaintiff of this information, in the form and at the time he was entitled to receive it, Defendant injured Plaintiff and the putative class members he seeks to represent.

66.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.  The required disclosures were not made, causing Plaintiff an informational injury.

67.     Defendant's failure to provide Plaintiff and the putative class with a lawful disclosure created a risk of harm that Plaintiff and members of the putative class would be

confused and distracted by the extraneous language.

**_Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy_**

68.    Defendant invaded Plaintiff's right to privacy.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsection, 15 U.S.C. § 1681b(b)(2).  As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization.

69.    The FCRA created a statutory cause of action akin to invasions of privacy and intrusions upon seclusion, harms recognized as providing the basis for lawsuits under English and American law.  Defendant invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion by procuring a consumer report on him and viewing his private and personal information without lawful authorization.

70.    The forgoing violations were willful.  At the time Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) Defendant knew they were required to provide a stand-alone form prior to obtaining a consumer report on Plaintiff and the putative class.  Defendant's willful conduct is also reflected by, among other things, the following facts:

      a.    Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

      b.    Defendant knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      c.    Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

71.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

72.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

      a.    determining that this action may proceed as a class action;

      b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

      c.    issuing proper notice to the putative class at Defendant's expense;

      d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

      e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
## Failure to Obtain Proper Authorization in
## Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)

73.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 1, 3, 4, 7, 9, 11-29, 34-52, and 54-61.

74.     Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization.

75.     The authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.

### *Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(ii): Informational Injury*

76.    Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form.  Thus, through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.

77.    Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure.  Such a disclosure was required to be provided to Plaintiff before the consumer report was to be procured.  By depriving Plaintiff of this information, Defendant injured Plaintiff and the putative class members they seek to represent.

78.    Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.

79.    Plaintiff suffered an informational injury.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2).  The FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and

receiving the consumer's written authorization.[2]

80.    Defendant's failure to provide Plaintiff and the putative classes with a lawful disclosure created a risk of harm that Defendant would obtain future consumer reports without lawful authorization..

### *Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(ii): Invasion of Privacy*

81.    Additionally, Defendant invaded Plaintiff's right to privacy and intruded upon his seclusion.    Plaintiff's consumer report contained a wealth of private information which Defendant had no right to access absent a specific Congressional license to do so.    Defendant invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion by procuring his consumer report  and viewing his private and personal information without lawful authorization.

82.    The foregoing violations were willful.  At this time Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii).    Defendant knew that in order for it to have authorization to obtain consumer reports on Plaintiff and the putative class members it was required to provide a lawful disclosure prior to obtaining a consumer report on Plaintiff and the putative class.  A plethora of authority, including both case law, and FTC opinions, existed at the time of Defendant's violations on this very issue that held waivers cannot be included in the FCRA forms at issue. Defendant's willful conduct is also reflected by, among other things, the following facts:

   a.    Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

   b.    Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

   c.    Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

---

[2] *Harris v. Home Depot U.S.A. Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).

83.    Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

84.    Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.    issuing proper notice to the putative class at Defendant's expense;

d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class;

e.    injunctive and declaratory relief; and

f.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

**COUNT III**
**Failure to Provide Adverse Action Notice**
**in Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)**

85.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 1-2, 4, 8, 10-18, 30-51, and 53-61.

86.    Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

87.    Defendant violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with pre-adverse action notice, a summary of FCRA rights and a copy of

their consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A).

88.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and published circuit court authority. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

89.     Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinions and case law existed.

### *Plaintiff's First Concrete Injury: Informational Injury*

90.     Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled to by statute, namely pre-adverse notice, before adverse action was taken. This notice should have included all information prescribed by § 1681b(b)(3)(A), including: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under § 1681g(c)(3) of the FCRA.

91.     Through the FCRA, Congress has created a new right—the right to receive pre-adverse notice as set out in the FCRA—and a new injury—not receiving said notice. The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

***Plaintiff's Second Concrete Injury: Inability to***
***Learn of the Contents of His Report and Tell His Side of the Story***

92.     Defendant's failure to provide timely notice deprived Plaintiff and Class Members of the opportunity to learn about the information in their consumer report and tell Defendant their side of the story before Defendant took adverse action.  Thus, Plaintiff was denied the opportunity to determine if the information contained in his consumer report was accurate, to plead his case, and to understand how it might affect his future efforts to obtain employment.

93.     With these two recognized injuries directly traceable to Defendant's failure to timely provide the notices required by § 1681b(b)(3), Plaintiff unquestionably has established Article III standing.

94.     Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

95.     Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative classes;

c.    issuing proper notice to the putative classes at Defendant's expense;

d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and the putative classes demand a trial by jury.

Dated this 25th day of September, 2019.

/s/ *Marc R. Edelman*
MARC R. EDELMAN, ESQ.
Fla. Bar No. 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone 813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com
*Attorney for Plaintiff*